**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JOEL LEONARD DUGUAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:25-cv-03187-RK |
| | ) | |
| COMMISSIONER OF SSA, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Plaintiff Joel Leonard Duguay's appeal brought under 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). After careful consideration and for the reasons explained below, the Court **ORDERS** that the ALJ's decision is **REVERSED** and **REMANDED**.

**Standard of Review**

The Court's review of the ALJ's decision denying Plaintiff's protective applications for social security benefits is limited to whether the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). Put another way, "we will affirm if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (internal quotation marks omitted).

An ALJ's "failure to comply with [Social Security Act] regulations . . . is [reversible] legal error." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). To determine whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (internal quotation marks omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or

[the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). On judicial review of the ALJ's decision, the Court does not "re-weigh the evidence presented to the ALJ," *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)), and must "defer heavily to the findings and conclusions of the [ALJ]," *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

**The Five Step Sequential Analysis for Disability Benefits**

To determine whether a claimant is entitled to benefits under the Social Security Act, the ALJ utilizes a familiar five-step analysis found at 20 C.F.R. §§ 404.1520(a) & 416.920(a), as follows:

At Step One the ALJ considers whether the claimant is engaged in substantial gainful work activity. If not, the ALJ moves to Steps Two and Three to consider whether the claimant has a severe medically determinable physical or mental impairment, or a combination thereof (Step Two), and whether any such impairments meet or are medically equivalent to a Listed Impairment (Step Three). If the ALJ finds that a claimant's impairments, individually or in combination, meet or medically equal a Listed Impairment, the claimant is entitled to disability benefits. Otherwise, the ALJ moves to Step Four of the analysis to assess and consider the claimant's residual functional capacity ("RFC")[1] and to determine whether the claimant can still do any past relevant work considering the claimant's RFC as assessed by the ALJ. In doing so, the ALJ is required to consider the persuasiveness of medical opinions and prior administrative medical findings. *See* 20 C.F.R. §§ 404.1520c & 416.920c. If the ALJ finds that the claimant can perform past relevant work given the ALJ's RFC determination, the claimant is not entitled to benefits. However, if the claimant is unable to perform past relevant work given their assessed RFC, the ALJ finally considers at Step Five whether the claimant can do other work that exists in significant numbers in the national economy considering the claimant's RFC, alongside their age, education, and work experience,

[1] A claimant's RFC "is the most [the claimant] can do" despite any "physical and mental limitations that affect what [the claimant] can do in a work setting" caused by a claimant's impairment(s) and related symptoms. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). The ALJ's RFC assessment must be based on "all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (internal quotation marks omitted). Although it is a medical question and must be based on some medical evidence, "it is ultimately an administrative determination" for the ALJ. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

and the corresponding testimony of a vocational expert. If the ALJ determines that the claimant cannot do so, the claimant is entitled to disability benefits.

**Discussion**

By way of overview, the ALJ found that Plaintiff has the following severe impairments: epilepsy and migraine headaches. The ALJ also determined that Plaintiff has the following non-severe impairments: pneumonia/hypoxia, pneumonitis, interstitial lung disease, mole/skin tag, and conjunctivitis of the right eye, in addition to obesity. However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing").

Additionally, the ALJ found that despite his limitations, Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels. Plaintiff can only occasionally climb ramps and stairs and can never climb ladders, ropes, and scaffolds. He can never work at unprotected heights or around moving mechanical parts and should never operate a motor vehicle on the job. He can have occasional exposure to atmospheric conditions and should never work in an environment with headlights, spotlights, and flashing lights. Plaintiff is limited to working in an environment with no more than a moderate noise level as defined by the Selected Characteristics of Occupations (as a supplement to the Dictionary of Occupational Titles). The ALJ found that Plaintiff was able to perform past relevant work of a salesclerk or alternatively that he could perform other work, specifically office helper, folder, and presser.

**Point on Appeal: Whether the ALJ's RFC Determination is Supported by Substantial Evidence**

On appeal, Plaintiff claims the ALJ failed to properly evaluate his migraines in assessing his RFC in that (1) the RFC did not account for interruptions in normal productive activity caused by Plaintiff's migraines, and therefore is not supported by substantial evidence, and (2) the ALJ did not properly evaluate or discount Plaintiff's subjective allegations regarding ongoing interruptions from his migraine headaches.

As noted above, a claimant's RFC "is the most [the claimant] can do" despite any "physical and mental limitations that affect what [the claimant] can do in a work setting" caused by an claimant's impairment(s) and related symptoms. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). The ALJ "must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (internal

quotation marks omitted). Although it is a medical question and must be based on some medical evidence, "it is ultimately an administrative determination" for the ALJ. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). In assessing a claimant's RFC, the ALJ must consider the "total limiting effects" of a claimant's medically determinable impairments and related symptoms, considering both medical and nonmedical evidence. 20 C.F.R. §§ 404.1545(e) & 416.945(e).

In considering a claimant's RFC, an ALJ "may discount subjective complaints . . . if inconsistencies are apparent in the evidence as a whole," although "an ALJ may not discount a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Koch v. Kijakazi*, 4 F.4th 656, 664 (8th Cir. 2021) (internal quotation marks omitted); *see Julian v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) ("An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony."). The Court "normally defer[s] to an ALJ's credibility determination," so long as the ALJ has properly considered factors including medical evidence and their work history; daily activities; duration, frequency, and intensity of pain; or dosage, effectiveness, and side effects of medication, among other factors. *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (internal quotation marks omitted). For purposes of judicial review, an "ALJ's brevity is not reversible error," rather the "ALJ's reasoning need only be clear enough to allow for appropriate judicial review." *Id.* (internal quotation marks omitted).

The Commissioner emphasizes in this case that the ALJ, as reflected in the written decision, considered and discussed in detail both Plaintiff's subjective allegations and the medical treatment reflected in the record regarding his migraine headaches. The ALJ recognized Plaintiff's testimony that he suffered (and continues to suffer) migraine headaches, on average one to two times a week despite his course of treatment, lasting for one to two days, and that light, sound, and motion can aggravate his migraines when he has one and can sometimes trigger a migraine. As recognized by the ALJ, Plaintiff's medical records reflect consistent complaints of ongoing migraine headaches despite a progressive course of treatment by various medicines, including use of both prophylactic medications like Inderal (propranolol) or Topamax (topiramate) and therapeutic medications like Imitrix (sumatriptan) or Fioricet, through a trial of six months of Ajovy (fremanezumab-vfrm) injection therapy. (*See, e.g.*, Tr. at 651.)

The ALJ ultimately found that "[t]he evidence does document an active migraine disorder for which the claimant engaged in treatment from neurology, who trialed multiple medications,

and experienced some benefit." (Tr. at 27-28.) In conjunction with this finding, the ALJ also found that Plaintiff's migraine headaches "remained overall the same," that is "frequent in nature." (Tr. at 25.) Plaintiff testified at the hearing that the then-recent injection therapy medication (Ajovy) "takes the constant headache away but it hasn't taken the migraines away." (Tr. at 47.)

The Commissioner relies on an Eighth Circuit case, *Austin v. Kijakazi*, 52 F.4th 723 (8th Cir. 2022). In *Austin*, the Eighth Circuit found that the ALJ had adequately accommodated the claimant's headaches in the RFC by limiting Austin to "light work" and imposing certain additional environmental limitations (i.e., avoiding extreme cold and wetness, direct sunlight, and loud noises) to "account for specific stressors that trigger Austin's headaches." *Id.* at 731. The Eighth Circuit concluded that Austin's argument that the ALJ "should have provided *additional* limitations amounts to a disagreement over the weighing of evidence within the record," which is contrary to the court's role on judicial review. *Id.* (finding that the ALJ's RFC assessment fell within the "available zone of choice provided by the whole record" (internal quotation marks omitted)); *see also Burr v. Bisignano*, No. 4:25-CV-00473-DGK-SSA, 2026 WL 1960936, at *2-3 (W.D. Mo. July 7, 2026) (finding that ALJ conducted a "thorough analysis" and the RFC assessment was supported by substantial evidence in fully accounting for Burr's migraine headaches, particularly where "the record evidence and [Burr]'s testimony shows that medication has helped control [her migraines]," including that Burr reported that both Benadryl and then Botox injections helped with her migraines).

Plaintiff suggests that *Austin* is distinguishable from this case to the extent the evidence in that case supported the environmental limitations included in the RFC assessment which addressed "specific stressors" or environmental factors that triggered Austin's headache symptoms. (*See* Doc. 14 at 2.) Here, in contrast, Plaintiff contends that while the environmental factors can sometimes trigger or aggravate his migraine symptoms, his migraines occur consistently or persistently outside of being "triggered" by certain environmental factors. In addition, the Court notes that in *Austin* the Eighth Circuit fundamentally affirmed the denial of social security benefits on the basis that "substantial evidence supports the ALJ's conclusion that the neurostimulator has largely controlled Austin's symptoms." 52 F.4th at 731; *see id.* at 727 (noting the ALJ's findings that the surgical and medical treatment "resulted in on-going symptom control without a consistent description of debilitating pain or the inability to function").

Here, however, as noted above, the ALJ found that Plaintiff has an "active migraine disorder." (Tr. at 27.) The whole record does not support the ALJ's finding that Plaintiff experienced "some benefit" related to his migraine headaches in the relevant sense suggested by the Commissioner, whether in the frequency, consistency or persistency of the headaches or the limiting effect of his migraine headaches. Instead, the whole record here, unlike in *Austin*, shows ongoing and consistent migraine headaches that were "stable" only in the sense of the status quo rather than in the sense of any lessened frequency or persistence or severity. (*See* Tr. at 421 (noting that "[f]requency has been stable but persistent"); 408 ("[s]till having frequent and severe migraine"); 654 (same).) The whole record shows that despite (1) multiple trials of different prophylactic medications with different dosages, Plaintiff's migraines continued to occur largely with the same reported frequency, and (2) that once a migraine occurs, therapeutic medications were helpful only if the symptoms were caught "early enough" but that if not, the symptoms were "difficult to control." (*See* Tr. at 407-08, 419, 421-22, 423-24, 426, 428-29, 432, 433-34, 439, 651, 655.);[2] *see also Koch v. Kijakazi*, 4 F.4th 656, 665 (8th Cir. 2021) (recognizing that "[i]mproved *symptoms* do not necessarily equate to improved *pain*" and that "temporary improvement in a patient's symptoms post-operation does not necessarily equate to long-term improvement").[3]

In addressing Plaintiff's RFC, the ALJ discussed Plaintiff's migraine impairment only from the viewpoint of addressing potential triggers or aggravation factors including light, sound, and motion sensitivity. Nothing in the record suggests, however, that the postural and environmental limitations discussed in the RFC "would avoid the onset of a migraine headache," *Khadivi v. Kijakazi*, No. 21-05059-CV-SW-WBG, 2022 WL 4117026, at *5 (W.D. Mo. Sept. 9, 2022), which the ALJ considered to be an "active" or ongoing medical issue. Nor did the ALJ properly explain

[2] The Commissioner also asserts, in support of the ALJ's decision, that the ALJ "discussed evidence that physical examinations revealed normal findings and observations." (Doc. 13 at 6.) While these normal medical findings may be relevant and informative for Plaintiff's seizure disorder, they are not so relevant and informative for Plaintiff's migraine disorder. For one, an ALJ "cannot rely solely on objective medical evidence to discount Plaintiff's subjective complaints," and for another, "an ALJ's reliance on [normal objective medical findings] in a case involving migraine headaches [would] appear[] misguided." *Stauffer v. Kijakazi*, No. 20-04121-CV-C-WBG, 2022 WL 636719, at *3 n.3 (W.D. Mo. Mar. 4, 2022).

[3] Plaintiff's medical records show that the neurologist specialist Plaintiff was referred to discussed with Plaintiff other options to follow his six-month trial of Ajovy which was not successful, including Amovig (another injection therapy) and Botox. The records indicate that Plaintiff was going to try Amovig and then "[if] not helping, will pursue [Botox]," while continuing Imitrex "as abortive treatment." (Tr. at 654.)

or set forth a reasoned basis sufficient for the Court to review a finding that Plaintiff's subjective statements as to the limiting effects of his "active migraine disorder" were discounted or disregarded. It is not apparent from the whole record, and particularly the medical records discussed by the ALJ, that Plaintiff's statements regarding the limiting effects of his migraines are inconsistent with the record or contrary to the evidence. Plaintiff's migraines occur two to three times per week with varying severity despite "trial[ing] multiple medications." (Tr. at 28.) The whole record shows a progressive and consistent treatment plan of not only therapeutic medications but also various prophylactic medications, most recently Ajovy injection therapy, which were not successful at preventing migraine headaches. Plaintiff's frequent and persistent migraines continue to occur despite this treatment plan and limit his ability to function in different ways depending on whether the migraine that occurs is light, sound, and/or motion sensitive. (*See* Tr. at 48-49.) Because the ALJ did not explain why or how Plaintiff's subjective statements are contrary to the record, considering the whole record, the Court is unable to determine whether the ALJ's decision in this regard is supported by substantial evidence.[4]

**Conclusion**

Accordingly, after careful consideration and review of the record before the Court and the parties' submissions on appeal, the Court **ORDERS** that the ALJ's decision is **REVERSED** and **REMANDED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 18, 2026

[4] The errors are not harmless. At the hearing, the vocational expert testified that an individual being absent from work, late to work, or having to leave work more than one time a month would preclude employment. (Tr. at 55, 56.)